## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>**STREAM TV NETWORKS, INC., et al.,**<br><br>Debtors. | **CHAPTER 11**<br><br>**Bankr. No. 23-10763 (AMC)**<br><br>**(Jointly Administered)**[2] |
| **REMBRANDT 3D HOLDING LTD,**<br><br>Plaintiff,<br>v.<br><br>**WILLIAM A. HOMONY, AS CHAPTER 11<br>TRUSTEE, et al.,**<br><br>Defendants. | **Adv. No. 24-00142 (AMC)** |

## MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11
## TRUSTEE'S MOTION TO DSIMISS ADVERSARY COMPLAINT

---

[2] On April 11, 2023, this Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*, Case No. 23-10764 (AMC). (Bankr. D.I. #81).

**TABLES OF CONTENTS**

Table of Authorities ...................................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................... 1

III.    ARGUMENT ..................................................................................................... 11

        A.      Applicable Legal Standard ................................................................... 11

        B.      Plaintiff's Claim for Injunctive Relief Against the Trustee is Barred
                or Otherwise Mooted by This Court's Sale Approval Order and the Closing of
                the Sale ................................................................................................. 12

IV.     CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 11

*Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir. 1993) .............. 13

*Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012) ................................................................. 11

*Buck v. Hampton Tp. School Dist.*, 452 F.3d 256 (3d Cir. 2006) .................................. 12

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) .............................................................. 13

*Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 326 B.R. 312 (Bankr. D. Del. 2005) ............................................................................................................................ 13

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999) ......................... 13

*E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000) .............................. 15

*EXDS, Inc. v. Ernst & Young LLP (In re EXDS, Inc.)*, 316 B.R. 817 (Bankr. D. Del. 2004) ...... 15

*Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100 (3d Cir. 2018) ........................ 11

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ................................................ 11

*In re Cambrian Holding Co., Inc.*, 110 F.4th 889 (6th Cir. 2024) ................................. 13

*In re Fundamental Long Term Care, Inc.*, 628 B.R. 344 (Bankr. M.D. Fla. 2021) ...................... 13

*In re Gay*, 2024 WL 2947614 (Bankr. W.D. Pa. June 11, 2024) .................................... 14

*In re Heritage Highgate, Inc.*, 679 F.3d 132 (3d Cir. 2012) ............................................ 9

*In re Martin*, 91 F.3d 389 (3d Cir. 1996) ........................................................................ 6

*In re Radnor Holdings Corp.*, 564 B.R. 467 (D. Del.) .................................................. 16

*In re Randall*, 358 B.R. 145 (Bankr. E.D. Pa. 2006) ..................................................... 12

*In re Reagor-Dykes Motors, LP*, 613 B.R. 878 (Bankr. N.D. Tex. 2020) .................... 14

*In re Residential Cap., LLC*, 2014 WL 3057111 ........................................................... 13

*In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 ............................................. 3

*In re Zimmer*, 630 B.R. 11 (Bankr. W.D. Pa. 2021) ..................................................... 14

*In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO ............................ 3

*Met–L–Wood Corp. v. Gekas (In re Met–L–Wood Corp.)*, 861 F.2d 1012 (7th Cir. 1988) ......... 13

*n re Reagor-Dykes Motors, LP*, 613 B.R. 878 (Bankr. N.D. Tex. 2020) ...................... 15

*Parkway Hosp. v. Shah*, 460 F. App'x 21 (2d Cir. 2012) ............................................... 16

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ....................................................... 11

*Smith v. Dobin*, 852 F. App'x 49 (3d Cir. 2021) ........................................................... 14

*Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360 (M.D. Pa. 2020)............................................. 14

*W.G. Nichols, Inc. v. Ferguson*,  2003 WL 22158794 (E.D. Pa. Sept. 18, 2003)......................... 12

**Rules**

8 Del. C. § 225  ..................................................................................................................... 2

11 U.S.C. § 365 ...................................................................................................................... 12

11 U.S.C. § 101 ...................................................................................................................... 1

William A. Homony, in his capacity as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative", and collectively with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., and Obermayer Rebmann Maxwell & Hippel LLP, submits this Memorandum of Law in support of his motion to dismiss the complaint (the "Adversary Complaint") filed against him by Plaintiff Rembrandt 3D Holding Ltd. ("Rembrandt").  In support of his Motion to dismiss, the Trustee respectfully states as follows.

## I.    INTRODUCTION

The history of this bankruptcy proceeding, which is well known to this Court and established by the judicially noticeable entries on the bankruptcy docket, establishes that Rembrandt is a bad actor, not an innocent victim, and that Rembrandt's Adversary Complaint is yet another ill-advised and impermissible collateral attack on this Court's well-reasoned decisions, in particular the decision to permit the Trustee to conduct a Section 363 sale of the Debtors' assets. As the record clearly establishes—and as this Court held in the sale approval order (Bankr. D.I. 876)—the Trustee did not sell, and the Trustee did not transfer property owned by non-debtors, including alleged intellectual property rights of Rembrandt.

Simply stated, Rembrandt's claim for injunctive relief against the Trustee—which seeks improperly to overturn the sale approval order by collateral attack—is barred by the doctrines of res judicata and mootness, and accordingly the Adversary Complaint should be dismissed.

## II.    FACTUAL AND PROCEDURAL HISTORY

On March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  On January 5, 2024, after almost a year of "acrimony" and "relative lack of

1

progress," this Court issued an opinion (the "Trustee Opinion," Bankr. D.I. 548) and entered an

order which, among other things, appointed a Chapter 11 trustee and granted the Debtors' secured

creditor Hawk Investment Holdings Limited ("Hawk") relief from the automatic stay to permit

litigation against the Debtors pending in the Delaware Court of Chancery under § 225 of Title 8

of the Delaware Code (the "225 Action") to proceed.  This Court held, in relevant part, that, due

to the gross mismanagement and lack of transparency under the Debtors' former CEO Mathu

Rajan's leadership, (i) a Chapter 11 trustee must be appointed to administer the Debtors' cases,

and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates.

As established by the Trustee Opinion and confirmed by the Adversary Complaint,[3] Rajan

(who is also founder and CEO of VSI) is conspiring with Rembrandt to derail the orderly progress

of the Debtors' bankruptcy proceeding while committing gross mismanagement, breach of

fiduciary duty and rampant self-dealing:

> Rather than moving expeditiously toward confirmation of a
> reorganizational plan that addresses creditor claims and formulates
> the Debtors' operations moving forward, these cases have stalled at
> virtually every turn.  The Court has expressed its concern with the
> cases' lack of progress and direction on multiple occasions.
> Furthermore, the evidence at Trial on the pending motions crystalized
> the Court's primary and urgent concern with the administration of the
> Debtors' cases to date, i.e., the plans, trustworthiness, and
> motivations of Mr. Rajan in his role as, for all intents and purposes,
> the singular figure in the Debtors' management.  There are many
> examples, large and small, that highlight (a) the Court's lack of faith
> in Mr. Rajan's ability or willingness to act consistent with the
> fiduciary duties the Debtors owe their creditors and the Court, (b) the
> relatively directionless nature of these cases to date, and (c) the
> entrenched acrimony between the Debtors, Hawk, SLS, and
> SeeCubic that has permeated the cases and driven nearly all activity
> to date.
>
> …

---

[3] *See, e.g.,* Adversary Complaint at ¶ 156.

> Alarmingly, the interrelationship between VSI, Stream, and Mr. Rajan's overlapping interests and roles is so entrenched that Mr. Rajan's testimony at Trial was at times rendered unintelligible, or alternatively, intentionally deceptive, by his inability or unwillingness to draw distinctions between the entities and his roles with each.
>
> …
>
> Mr. Rajan's conflicted interests, gamesmanship, and lack of candor to the Court and creditors rises to the level of gross mismanagement of the estates, even when viewed against the high standard of glaring and inexcusable badness.

Trustee Opinion at pp. 31, 61; *see also id.* at pp. 49-51 (detailing the Court's concerns with the Debtors' unauthorized post-petition licensing covenant with Rembrandt, which had "the taint of benefit to VSI without clear benefit to the Debtors and their estates").

This is the third bankruptcy case in which Rajan (first thru an entity controlled by him named "VTI" and next thru his entity "VSI") attempted to confiscate Stream assets for himself, at the expense of the Debtor's secured and other creditors, and the second bankruptcy case in which Rembrandt colluded with Rajan to accomplish that untoward result.  The first was a Chapter 11 case initiated by the Stream TV Debtor on February 24, 2021 and docketed at *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second was an involuntary Chapter 7 case initiated on May 23, 2021 by, *inter alia*, colluding creditor Rembrandt, docketed at *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").

The Delaware Bankruptcy Court dismissed the Delaware Voluntary Bankruptcy Case on May 17, 2021, as having been filed in bad faith:

> Mr. Rajan established VTI of which he is the controlling shareholder, president, and until recently the sole director.  Using VTI he began to fundraise using Stream's assets despite the injunction.

3

> It is clear, through documentary evidence, that Mr. Rajan intended to use a Stream bankruptcy as a mechanism by which he could, via Stream, regain the Ultra-D assets from the secured lenders and then through VTI obtain them at a fraction of what he believed was the assets' value.

Delaware Voluntary Bankruptcy Case at D.I. 200, 14:20-15:4; *id.* at D.I. 198 (order dismissing bankruptcy).

On May 23, 2021, just six days later, the Stream TV Debtor, Rajan, Rajan's brother Raja and Rembrandt executed a collusive settlement agreement (the "Rembrandt Agreement") to grant Rembrandt creditor status in a ruse to circumvent the dismissal of the Delaware Voluntary Bankruptcy Case. It is this agreement that the Adversary Complaint trumpets as justifying the relief sought by Rembrandt. *See, e.g.,* Adversary Complaint at ¶ 38. On May 23, 2021, the same day that Mr. Rajan executed the Rembrandt Agreement on his own behalf and on behalf of the Debtor, Rembrandt, as one of three petitioning creditors, filed the Delaware Involuntary Bankruptcy Case against the Stream TV Debtor, with the timing of the filing substantiating the concern that the Rembrandt Agreement was a sham concocted by Mr. Rajan and Rembrandt to fix a contrived claim for Rembrandt to end-run the Delaware Bankruptcy Court's dismissal of the Delaware Voluntary Bankruptcy Case. Delaware Involuntary Bankruptcy Case at D.I. 1.

Not fooled, the Delaware Bankruptcy Court again dismissed Stream's Delaware bankruptcy proceeding as a bad faith filing, holding that "it's clear to me that this proceeding was filed as another attempt by the parties to circumvent my dismissal order" and agreeing with the conclusion that the Rembrandt and the other petitioning creditors were seeking relief which "would not be beneficial to the creditor body." Delaware Involuntary Bankruptcy Case at D.I. 37, 63:18-64:18.

Running from an unfriendly Delaware Bankruptcy Court, Rajan, through VSI and Rembrandt, turned to the Pennsylvania Bankruptcy Court, and is attempting to run the same playbook which now seeks to obstruct and undo the Trustee's successful effort to realize millions of dollars for the Debtors' creditors, and which prompted this Court to appoint a Trustee in the first instance:

> The Court is not convinced conversion or dismissal is appropriate at this stage… The replacement of Mr. Rajan at the helm of the Debtors' estates and the appointment of a trustee to evaluate the Debtors' assets, potential deals, potential claims, etc., is needed… If these cases have any chance of succeeding, it will be because there is transparency to the Court and creditors and an impartial third-party evaluating assets, claims, and the Debtors' reorganizational prospects. A trustee will obviously come with a cost, but the Court believes the value of an unconflicted, third-party neutral to assess the state of the Debtors' operations, potential transactions, and claims and efficiently determine whether and how the Debtors can achieve reorganization, more than offsets these costs.

Trustee Opinion at 73-74.

On January 9, 2024, the Office of the United States Trustee filed a Notice of Appointment of William A. Homony to serve as the Chapter 11 trustee (the "Appointment Date") as well as an Application for the Entry of an Order Approving the Appointment of the Trustee (the "Application") (Bankr. D.I. 554 and 553, respectively). On January 12, 2024, this Court entered an Order granting the Application to appoint the Trustee (D.I. 558).

To determine the best course of action for the Debtors' stakeholders, the Trustee (1) completed a comprehensive investigation of the Debtors' financial affairs, (2) consulted with his professionals, Debtors' subsidiaries, Rajan, VSI, Rembrandt, and Debtors' secured creditors, (3) evaluated the significant legal and factual hurdles of the 225 Action, which put at substantial risk Debtors' assets and any creditor recovery, and, (4) evaluated the need to fund the operations of the Debtors' research and development subsidiary SeeCubic BV, and potential sources of that funding.

5

In the exercise of his reasonable business judgment, the Trustee determined that a settlement with Hawk, as collateral agent for the secured creditors (collectively, the "Secured Creditors"), which facilitated the marketing and sale of Debtors' Assets, was in the best interests of the Debtors' varied stakeholders.

That settlement was achieved, approved by this Court, and provided, through a carve-out funded by the Secured Creditors, at least $9,000,000.00 for the benefit of Debtors' estates (the "Hawk Settlement").

Specifically, on May 6, 2024, the Trustee filed a Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the Hawk Settlement (the "9019 Motion," Bankr. D.I. 630).  The Trustee's 9019 Motion was vigorously opposed by Rembrandt and VSI. *See, e.g.,* Bankr. D.I. 642 (VSI's 9019 objection); Bankr. D.I. 643 (Rembrandt's 9019 objection), Rembrandt's opposition argued, *inter alia*, that the Hawk Settlement "will violate both the Philips and Rembrandt licenses" and that the Trustee's proposed compromise should not go forward due to the Rembrandt Agreement.  *See* Bankr. D.I. 643, Rembrandt's 9019 Objection at ¶¶ 2, 31-35. This Court conducted an evidentiary hearing on the 9019 Motion on June 5, 2024, at which the Trustee presented evidence to establish that the Hawk Settlement satisfied the *Martin*[4] factors, and was cross-examined by both VSI and Rembrandt.  *See* Bankr. D.I. 651 (6/5/24 "Evidentiary Hearing Held on . . . Motion to Approve Compromise"); Bankr. D.I. 670 (transcript of 6/5/24 hearing).

This Court approved the Hawk Settlement (the "9019 Order") (Bankr. D.I. 653) over the objections of VSI and Rembrandt, holding, *inter alia*, that the "Settlement represents a valid exercise of the Trustee's business judgment, having been informed by extensive research,

---

[4] *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

investigation, and negotiation by the Trustee" and that "[t]he Settlement and Agreement are in the best interest of the Debtors' estates and [stakeholders]." Bankr. D.I. 653, 9019 Order at ¶¶ 4, 7.  Rembrandt appealed the 9019 Order (Bankr. D.I. 685), and that appeal is pending in the District Court (E.D. Pa. No. 24-cv-2727).  VSI filed a motion to reconsider the 9019 Order (Bankr. D.I. 686), which was considered by this Court at a November 7, 2024 hearing (see Bankr. D.I. 791) at which Rembrandt appeared (*see* Bankr. D.I. 883), and ultimately denied (Bankr. D.I. 805).

Pursuant to the court-approved Hawk Settlement, on September 30, 2024, the Trustee filed a motion with this Court seeking authorization and approval of the Stalking Horse APA and the Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is," "where is" basis, without any warranty of any kind, express or implied (the "Sale Motion," Bankr. D.I. 750).  The Sale Motion explicitly states that the Trustee did not intend to sell or assign the Rembrandt License as a part of the Stalking Horse APA.  Bankr. D.I. 750, Sale Motion at ¶¶ 26-27.

Like the 9019 Motion, the Sale Motion was vigorously opposed by Rembrandt and VSI. *See, e.g.,* Bankr. D.I. 788 (VSI's objection to Sale Motion); Bankr. D.I. 789 (Rembrandt's objection to Sale Motion).  Both objections raised issues substantially similar to those which form the basis of Rembrandt's Adversary Complaint.  *See* Bankr. D.I. 789 at ¶ 1 ("Rembrandt requests that the [Sale] Motion be denied and Rembrandt further seeks an order to prevent the 363 Sale and that [sic] the chapter 11 trustee . . . not make any new proposal to sell assets of the Debtors until the Trustee has properly determined what are the assets of the Debtors and more specifically, has removed the technology that belongs to other third party entities from the technology the debtors are proposing to sell"); Bankr. D.I. 788 at ¶ 46 (VSI alleges that "the Trustee has done little or

nothing to protect the estate or the third-party licenses of Philips and Rembrandt from infringement by the stalking horse and other enjoined parties").

On November 13, 2024, the Court held a hearing and approved the Bidding Procedures and the Stalking Horse APA with SeeCubic Inc. ("SeeCubic"). Bankr. D.I. 804; Bankr. D.I. 883 (transcript). The order approving the Bidding Procedures was entered on November 20, 2024 (Bankr. D.I. 811, the "Bidding Procedures Order"). The Bidding Procedures Order also set a deadline of November 22, 2024 for the filing of objections specifically to the sale of the Debtor's Assets and a deadline of November 29, 2024, for the filing of responses to any objections. On November 22, 2024, VSI and Rembrandt filed their objections, which improperly reargued the merits of the Hawk Settlement and deflected attention from the conspiratorial and collusive actions of Rajan, VSI and Rembrandt, ignoring this Court's observations about Rajan's spectacular failures as a fiduciary as reflected in the Trustee Opinion. *See* Bankr. D.I. 815 (VSI objection); Bankr. D.I. 816 (Rembrandt Objection). On December 4, 2024, this Court held yet another hearing concerning the sale of the Debtors' assets. Bankr. D.I. at 860; Bankr. D.I. at 878 (transcript).

On December 9, 2024 – after consideration of Rembrandt's evidence and arguments at numerous hearings and in voluminous written submissions – this Court entered an order (Bankr. D.I. 876, the "Sale Approval Order") which details the Trustee's successful efforts to marshal and sell Debtor assets for the benefit of creditors, and approves the sale of those assets to SeeCubic pursuant to the APA. In the Sale Approval Order, this Court found, *inter alia*, that:

- The Trustee "afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets," *id.* at ¶ H;

- "The Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner and at arms' length," *id.* at ¶ J;

- "The sale process conducted by the Trustee pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Assets for the Trustee and the Debtors' estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result," *id.* at ¶ L;

- "The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Asset Purchase Agreement. The consummation of the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates, and other parties in interest," *id.* at ¶ M;

- "the Trustee, on behalf of each Debtor, has all of the power and authority necessary to (i) execute and deliver the Asset Purchase Agreement and all other documents to consummate the Sale, and (ii) consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement. The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates," *id.* at ¶ AA; and

- "The Trustee has demonstrated a sufficient basis and compelling circumstances warranting his to (i) entry into the Asset Purchase Agreement, and (ii) sale of the Assets, and such actions are an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include that (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize and realize the value of the Assets for the benefit of the Debtors, their estates, and their creditors; and (iii) unless the Sale contemplated by the Asset Purchase Agreement is concluded expeditiously, creditor recoveries are likely to be adversely affected," *id.* at ¶ BB.

Moreover, this Court found that the interests of Rembrandt and others similarly situated "are adequately protected thereby satisfying section 363(e) of the Bankruptcy Code by having their liens, claims, encumbrances, and interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, encumbrances, and interests, if any, attach to the proceeds of the Sale . . . in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale . . . ." *Id.* at ¶¶ DD; *see also, e.g., In re Heritage Highgate, Inc.*, 679 F.3d 132, 137 n.1 (3d Cir. 2012) (Forms of "adequate

protection . . . include other collateral that has value in excess of the secured creditor's claim or a budget that provides for the continued operation of the debtor's business without detriment to the secured lender's position.")

The Sale Approval Order "authorized, empowered, and directed [the Trustee] to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Asset Purchase Agreement, Transaction Documents and this Sale Order," and made clear that "[a]ll persons, entities, and interested parties are prohibited and enjoined from taking any action that would in any way adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement, the other Transaction Documents, and this Sale Order." *Id.* at ¶¶ 5, 7. Rembrandt and VSI filed a joint notice of appeal of the Sale Approval Order (Bankr. D.I. 877), and that appeal is pending in the District Court (E.D. Pa. No. 24-6617).

On December 2, 2024, Rembrandt filed the Adversary Complaint, which contains a single claim against the Trustee seeking "an injunction and order requiring the Trustee to determine the assets of the estate, separate out the Rembrandt intellectual property prior to sale and to deliver Rembrandt [sic] the licensed intellectual property pursuant to Section 10 of the settlement agreement." Adversary Complaint at ¶ 195. The relief requested in the Adversary Complaint is prohibited by this Court's Sale Approval Order, which expressly approves and directs the Trustee to consummate the sale. The fundamental allegation underlying the Adversary Complaint – i.e., that "[i]t is black letter law that the trustee cannot sell property not owned by the Debtor. The intellectual property licensed is owned by Rembrandt. . . . The trustee has an affirmative legal duty to remove Rembrandt's property prior to a sale," Adversary Complaint at ¶¶ 3, 7 – is plainly

10

foreclosed by the Sale Approval Order.  *See* D.I. 876, Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.").

## III.    ARGUMENT

### A.    Applicable Legal Standard

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *see also, e.g., Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) (documents filed on bankruptcy dockets are matters of public record).  Res judicata and collateral estoppel may be raised upon a Rule 12(b)(6) motion if the facts are admitted, uncontroverted, or conclusively established so that nothing further can be developed by a trial of the issue.  *In re*

*Randall*, 358 B.R. 145, 163 (Bankr. E.D. Pa. 2006); *W.G. Nichols, Inc. v. Ferguson*, 2003 WL 22158794, at *2 (E.D. Pa. Sept. 18, 2003); *see also Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that, in evaluating a motion to dismiss, the court "may consider . . . items appearing in the record of the case" (quotation marks and citation omitted)).

### B.    Plaintiff's Claim for Injunctive Relief Against the Trustee is Barred or Otherwise Mooted by This Court's Sale Approval Order and the Closing of the Sale

The Adversary Complaint contains a single count against the Trustee seeking "an injunction and order requiring the Trustee to determine the assets of the estate, separate out the Rembrandt intellectual property prior to sale and to deliver Rembrandt [sic] the licensed intellectual property pursuant to Section 10 of the settlement agreement." Adversary Complaint at ¶ 195.[5]  Rembrandt's requested injunctive relief is plainly inconsistent with this Court's 9019 Order and Sale Approval Order and the claims against the Trustee should be dismissed.

Res judicata, also known as claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *In re Residential Cap., LLC*, 2014 WL 3057111, at *11 (Bankr. S.D.N.Y. July 7, 2014) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)). The following requirements ordinarily must be satisfied for res judicata to apply: "(1) a final judgment on the merits, rendered by a court of competent jurisdiction, in a prior action involving; (2) the

---

[5] *See also id.* at Prayer for Relief ¶ e (seeking an "injunction prohibiting any sale of any assets of the Debtors' until the Trustee has determined what property is property of the Debtors and what property is not the property of the Debtors, and more specifically, determine the property that is Rembrandt's and remove it from any assets being sold"); *id.* at ¶¶ f-g (seeking "an order that the Trustee remove from the Debtors' Assets the property which is owned by Rembrandt . . . [and] transfer source code, designs, documents, and other know-how to fulfill Stream's obligations and license to Rembrandt pursuant to 11 U.S. Code § 365(n) and the grant of rights from Stream to Rembrandt under section 10 of the Settlement Agreement").

same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 326 B.R. 312, 318 (Bankr. D. Del. 2005). "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

The first and second factors are satisfied. With respect to the first factor, it is well-established that orders approving bankruptcy sales and compromises are final orders for res judicata purposes. *See, e.g., In re Cambrian Holding Co., Inc.*, 110 F.4th 889, 892 (6th Cir. 2024) ("Courts have treated a bankruptcy court's order approving a sale of the debtor's property under § 363 as a 'final' order. This treatment has meant that a disgruntled party can immediately appeal a sale order. And it has meant that a sale order can trigger the doctrines of issue and claim preclusion in other cases." (citations omitted)); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 742 (5th Cir. 1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for res judicata purposes."); *Met–L–Wood Corp. v. Gekas (In re Met–L–Wood Corp.)*, 861 F.2d 1012, 1016 (7th Cir. 1988) (holding that bankruptcy court's order confirming judicial sale or a debtor's estate was a final order); *In re Fundamental Long Term Care, Inc.*, 628 B.R. 344, 346–47 (Bankr. M.D. Fla. 2021) ("a final order approving a bankruptcy settlement under Fed. R. Bankr. P. 9019 binds creditors and has preclusive effect on all matters that were or should have been raised in the proceeding"); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 887–88 (Bankr. N.D. Tex. 2020) ("An order approving a settlement under Rule 9019 has res judicata effect as a final order."); *In re Zimmer*, 630 B.R. 11, 12–13 (Bankr. W.D. Pa. 2021) ("Once the Court approved the settlement by Order dated March 10, 2020, Mr. Zimmer[, who had knowledge of the approval order and failed

to object,] was subject to its terms by operation of res judicata or collateral estoppel. . . . To hold

otherwise would permit Mr. Zimmer to re-litigate matters that were or could have been litigated

(i.e., whether the some of the assets at issue should be distributed to Mr. Zimmer or to the

creditors).  Any opposite conclusion would also permit Mr. Zimmer to have the unilateral power

to impair or destroy rights or interests established by the judgment previously entered by the Court,

which is something that the doctrines of res judicata or collateral estoppel are designed to

preclude." (citations, quotation marks, and alteration marks omitted)).[6]

The second factor is established by Rembrandt's active opposition to the 9019 Motion and

the Sale Motion.  *See, e.g., Smith v. Dobin*, 852 F. App'x 49, 51–52 (3d Cir. 2021) (affirming the

District Court's ruling that claims were barred by claim preclusion, and  concluding that the

plaintiff also failed to state a claim on which relief can be granted when the plaintiff unsuccessfully

challenged the purchase of her former house in the bankruptcy court, because the plaintiff "either

litigated or could have litigated her allegations of fraud regarding [the buyer] in that proceeding");

*In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 888 (Bankr. N.D. Tex. 2020) (holding that a party

in interest who receives notice of and has opportunity to object to a Rule 9019 motion is bound by

a resulting order for purposes of res judicata).  Rembrandt objected to the Trustee's Compromise

---

[6] Rembrandt has filed several appeals relating to the 9019 Order and Sale Approval Order, but such appeals do not affect the finality of the orders for res judicata purposes. *See, e.g., In re Gay*, 2024 WL 2947614, at *12 n18 (Bankr. W.D. Pa. June 11, 2024) (collecting cases holding that "courts have found the doctrines [of res judicata and collateral estoppel] applicable even in instances where the final order being enforced or applied is the subject of appeal"); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 418 (M.D. Pa. 2020) (The pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment." (quotation marks and citation omitted)).

Motion (Bankr. D.I. 643) and objected to the Trustee's motion to approve bidding procedures (Bankr. D.I. 789), raising issues which are substantively identical to those which Rembrandt argues justify an injunction in the Adversary Complaint.

The final res judicata factor – a subsequent suit based on the same cause of action – is also met. While courts within the Third Circuit have recognized that application of the traditional res judicata analysis is "confounded" by the "depth and breadth of a bankruptcy proceeding," *EXDS, Inc. v. Ernst & Young LLP (In re EXDS, Inc.)*, 316 B.R. 817, 922 (Bankr. D. Del. 2004), the relief requested by Rembrandt is clearly such that the "factual underpinnings, theory of the case, and relief sought . . . are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir. 2000).

Indeed, the purported wrongdoing raised in the Adversary Complaint – i.e., Rembrandt's allegation that the Trustee's sale motion seeks to sell property belonging not to the Debtors, but instead to Rembrandt, *see* Adversary Complaint at ¶¶ 2-7 – is identical to the grounds raised in Rembrandt's objections to the Trustee's 9019 Motion and Sale Motion. *See, e.g.,* Bankr. D.I. 643 at ¶ 41 (Rembrandt's objection to 9019 Motion, alleging that "all Stream demonstrators, products and even the core Ultra-D technology itself contains Rembrandt IP"); Bankr. D.I. 789 at ¶ 2 (Rembrandt's objection to Sale Motion, alleging that "the bankruptcy estates do not own either of the Philips or Rembrandt technology that has been incorporated into the technology and products that were being sold by the Debtors"). This Court's 9019 Order and Sale Approval Order fully and finally disposed of Rembrandt's claims that the Trustee was improperly seeking to sell property belonging to Rembrandt, and Rembrandt's claim for an injunction against the Trustee in the Adversary Complaint is accordingly barred by the doctrine of res judicata. *See, e.g.,* D.I. 876,

Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.").[7]

Furthermore, the injunctive relief sought by Plaintiff was rendered moot by virtue of the Sale Approval Order and the subsequent consummation of the sale.  *See* Bankr. D.I. 915 (Notice of Closing stating that "the Debtors closed on the Sale of substantially all of their Assets to SeeCubic, Inc. . . . on January 3, 2025").  Simply put, Plaintiff can no longer obtain any legally cognizable benefit from the injunctive relief sought because such relief seeks to enjoin actions (i.e., the Section 363 Sale) which – with this Court's approval – have already taken place.  *See, e.g.,* Adversary Complaint at ¶ 171 (detailing alleged harm to Rembrandt "***If*** the Trustee is allowed to conduct the 363 Sale . . ." (emphasis added)).  Assuming arguendo that the Trustee's actions harmed Plaintiff (which the Trustee denies), there remains no potential future harm to Plaintiff that might require an equitable remedy.  Accordingly, even if the Adversary Complaint's sole count against the Trustee is not barred by the Sale Approval Order and the 9019 Order, the requested injunctive relief is moot.  *See Parkway Hosp. v. Shah*, 460 F. App'x 21, 23 (2d Cir. 2012) (holding that plaintiff's claims were moot because plaintiff could no longer benefit from the declaratory and injunctive relief sought in the complaint).  Accordingly, the Amended Complaint should be dismissed against the Trustee in its entirety.

---

[7] For the same reason, Rembrandt's claim against the Trustee is barred by issue preclusion or collateral estoppel, which is narrower than claim preclusion in that claim preclusion bars all issues that were or could have been raised in the prior proceeding, while issue preclusion bars only those issues actually raised and decided.  *See, e.g., In re Radnor Holdings Corp.*, 564 B.R. 467, 483 (D. Del.).

16

## IV.    CONCLUSION

In light of the foregoing facts and authorities, the Trustee respectfully submits that this Court enter an order dismissing the Adversary Complaint against the Trustee for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated: January 6, 2025

By: */s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700

and

By: */s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066

*Counsel to the Chapter 11 Trustee*