**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc., (Stream)<br><br>Debtor. | Chapter 11<br>**Bky. No. 23-10763 (AMC)** |
| In re:<br><br>Technovative Media, Inc., (Technovative)<br><br>Debtor. | Chapter 11<br>**Bky. No. 23-10764 (AMC)**<br><br>(Jointly Administered) |
| Rembrandt 3D Holding Ltd, (Rembrandt)<br><br>Plaintiff,<br><br>v.<br><br>William A. Homony, (Trustee) as Chapter 11 Trustee, et al.,<br><br>Defendants. | **Adv. No. 24-00142 (AMC)** |

**PLAINTIFF REMBRANDT 3D HOLDING LTD'S RESPONSE TO CHAPTER 11 TRUSTEE'S 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM <u>UPON WHICH RELIEF CAN BE GRANTED</u>**

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 4

    I.    Motions to Dismiss: ................................................................................................ 4

    II.    Duty to Account for Estate Property ....................................................................... 5

    III.    Issue Preclusion: ..................................................................................................... 6

    IV.    Remedies Sought in Complaint: ............................................................................. 7

ARGUMENT ......................................................................................................................... 7

    I.    Motions to Dismiss: ................................................................................................ 7

    II.    Duty to Account for Estate Property ....................................................................... 8

    III.    Issue Preclusion ................................................................................................... 11

    IV.    Remedies Sought in Complaint: ........................................................................... 12

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                **Page(s)**

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009) ................................................................................. 13
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 4
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 4
*Butner v. United States*,
  440 U.S. 48 (1979) .................................................................................................................. 6
*Campbell Soup Co. v. ConAgra, Inc.*,
  977 F.2d 86 (3rd Cir. 1992) ..................................................................................................... 3
*Carnival Corp. v. DeCurtis Holdings LLC (In re DeCurtis Holdings)*,
  No. 23-10548 (JKS),
  2023 WL 5153645 (Bankr. D. Del. Aug. 9, 2023) ................................................................... 6
*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) ................................................................................................... 5
*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .............................................................................................................. 15
*Georgia-Pacific Consumer Products LP v. Von Drehle Corp.*,
  781 F.3d 710 (4th Cir. 2015) ................................................................................................... 7
*In re Revel*,
  802 F.3d 558 (3d Cir. 2015) ................................................................................................ 6, 8
*In re Whitehall Jewelers Holdings, Inc.*,
  No. 08-11261 (KG),
  2008 WL 2951974 (Bankr. D. Del. July 28, 2008) ............................................................. 6, 8
*Jones v. Bock*,
  549 U.S. 199 (2007) ................................................................................................................ 5
*Mission Product Holdings, Inc. v. Tempnology, LLC*,
  139 S. Ct. 1652 (2019) ............................................................................................................ 6
*Moldo v. Clark (In re Clark*,
  266 B.R. 163 (9th Cir. B.A.P. 2001) ....................................................................................... 6
*Montana v. United States*,
  440 U.S. 147 (1979) ................................................................................................................ 6
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .............................................................................................................. 14
*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) .................................................................................................. 12
*Rogers v. Air Line Pilots Ass'n, Int'l*,
  988 F.2d 607 (5th Cir. 1993) ................................................................................................. 12
*Sands v. McCormick*,
  502 F.3d 263 (3d Cir. 2007) .................................................................................................... 5
*SLW Capital LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
  530 F.3r 230 (3rd Cir.2008) ................................................................................................ 5, 6
*Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*,

609 F. Supp. 1325 (E.D. Pa. 1985),
*aff'd*, 797 F.2d 1222 (3d Cir. 1986) .................................................................................... 7

**Statutes**

11 U.S.C. § 365(n) ................................................................................................................ 11
11 U.S.C. § 541 ................................................................................................................ 5, 11
11 U.S.C. § 704(a) ............................................................................................................. 5, 8
18 U.S.C. §1832 ..................................................................................................................... 11
35 U.S.C. § 271 ..................................................................................................................... 11

**Rules**

F.R.C.P. Rule 12(b) ....................................................................................................... 3, 4, 5, 7
F.R.C.P. Rule 8(c)(1) ........................................................................................................... 3, 5

Plaintiff Rembrandt 3D Holding Ltd ("Rembrandt"), by and through undersigned counsel, submits this Response to the Trustee's Motion to Dismiss and respectfully states as follows:

## INTRODUCTION

Rembrandt is the developer and owner of multiple patents and more than 170 trade secrets which comprise the 3D no glasses technology invented by its C.E.O. Stephen Blumenthal. Blumenthal's discoveries came while working with his licensed Royal Philips WOWvx 3D hardware and software tools in the design of his 3D Auto Stereoscopic Display LCD technology platform. The full history of the Rembrandt technology is stated in the attached sworn Declaration of Mr. Blumenthal. (*See generally*, D.I. 1-27.)

Rembrandt protected its technology in a lawsuit against Stream filed in SDNY in June 2017 (*Rembrandt* v. *Stream*, No. 17-CV-882-RA). Federal Judge Abrams ordered the parties to mediate and at a lengthy mediation conference overseen by Federal Magistrate Parker. Stream agreed to obtain a license from Rembrandt. Representing Stream and authorized to act on Stream's behalf was Shadron Stastney. Mr. Stastney is now the C.E.O. of SeeCubic, the Stalking Horse bidder.

Mr. Stastney as CFO and a director of Stream knew of the technology and the fact that Stream's technology used the foundational Rembrandt technology as well as the Philip's technology. Stastney knew that absent Rembrandt, the Stream technology simply didn't work.

The settlement reached at that meeting and the virtually identical final settlement and license reached in May 2021 provided Rembrandt with $5.8 million in cash and more than three million TVs *at cost*. Mr. Stastney stated that the profit margin per TV could be as high as $400 per TV or a value to Rembrandt of $1.2 billion.

This agreement, subsequently finalized on the same terms, but the then CEO of Stream, is proof that Stastney understood and agreed that Rembrandt had and owned technology essential to

1

the Stream technology. The final agreement includes identical terms negotiated with Mr. Stastney before Magistrate Parker while Mr. Stastney was CFO of Stream.

The Trustee now suggests that even though the Mr. Stastney negotiated the terms of the license in front of a federal magistrate judge, the actual license was the result of some inappropriate collusion. It is clear when looking at both the term sheet and final license agreement that the terms of the license were negotiated with Mr. Stastney rather than Mathu Rajan. Mathu Rajan simply signed an agreement with the same terms actually negotiated by Mr. Stastney. Is the Trustee accusing Mr. Stastney of being involved in an inappropriate breach of his fiduciary duties while CFO of Stream? Was the magistrate judge in on the alleged inappropriate collusion? These are ludicrous positions that are wholly unsupported by fact, but even if there was a scintilla of evidence to support their factual argument, a motion to dismiss is an inappropriate time to make such factual arguments.

This Court has recognized Rembrandt's rights in its decisions and Orders. On January 4, 2024, Judge Coleman granted the Debtor's motion for a temporary restraining order referring to the Stream's license with Rembrandt and the potential for irreparable harm if SeeCubic had possession of the technology and attempted to use or market it. The court enjoined SeeCubic, Shad Stastney, Hawk and related parties from taking any to "sublicense, transfer, assign, or otherwise dispose of or affect any license or technology held or purported to be held by the Debtor's estates, including . . . the Rembrandt license." (Adv. Case No. 23-00057, D.I. 119 at ¶ 9.)

Most importantly, this Court cited the need to protect intellectual property rights stating, "it is well-established that the sanctity of intellectual property rights warrants the issuance of

2

injunctive relief where necessary to protect such rights." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3rd Cir. 1992).

In additional to the TRO, which has been extended, this Court specifically excluded the sale or transfer of Rembrandt's intellectual property and any physical assets containing that property from the Sale Order, both of which specifically excluded the sale or transfer of Rembrandt's intellectual property and any physical assets containing that property. (*In re Stream TV Networks, Inc., et. al.*, Bankruptcy No. 23-10763, D.I. 876 at §§ 2.2(j)-(k).)

Thus the Court has repeatedly recognized Rembrandt's rights and agreed that Rembrandt's intellectual property and physical assets that contain such technology were not sold. That is, ownership or title to Rembrandt's property did not transfer to the Stalking Horse bidder and remain with Rembrandt and Rembrandt has all rights of ownership and possession. Rembrandt filed this Complaint because the Trustee failed to determine what was Rembrandt's property and remove it from the assets sold. Instead, he effectuated the sale and transfer of the debtor's UltraD technology to the Buyer which included Rembrandt IP.

Plaintiff notes that in the SDNY litigation and the current bankruptcy litigation, no one provided any evidence or testimony disputing Rembrandt's claims. The significant amount of evidence and testimony provided by Rembrandt stands effectively unrebutted. This is not a surprise given that the C.E.O.s of Rembrandt, Stream and SeeCubic have all previously affirmed Rembrandt's IP rights.

The Trustee's motion seeks dismissal based upon affirmative defenses and not on a failure to state a cause of action. It cannot be brought under F.R.C.P. Rule 12(b) and can only be brought under F.R.C.P. Rule 8(c)(1). This failure to follow the rules compels this Court to deny the motion.

3

The Trustee's Motion to Dismiss fails also for substantive reasons as it attempts to evade his explicit legal and fiduciary obligations to return and provide access to Rembrandt's intellectual property. These obligations, firmly grounded in the Settlement Agreement and applicable bankruptcy law, remain unaffected by the Section 363 sale or the doctrine of issue preclusion. The Trustee has not disputed the existence of these duties, nor can he, as they are clearly established by the governing statutes and legal agreements.

Instead, the Trustee argues that his obligations have been rendered moot by the sale, an argument that fails both legally and factually. The Asset Purchase Agreement explicitly excluded Rembrandt's intellectual property and related physical assets from the scope of the sale, ensuring that the Trustee's duty to return and protect these assets remains intact. Despite the clear language in the court order excluding both Rembrandt intellectual property and all physical assets containing that property and the Trustee's prior position that he was not selling Rembrandt's IP, the Trustee now reverses his position and argues that the sale included Rembrandt's IP and cut off Rembrandt's ownership. He now seeks protection under the sale that he vigorously argued did not include Rembrandt's property.

## LEGAL STANDARD

I. **Motions to Dismiss:**

A motion to dismiss under F.R.C.P. Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint, requiring it to state a claim that is plausible on its face. To survive a motion to dismiss, the complaint must include sufficient factual matter, accepted as true, to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept as true

4

all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Sands v. McCormick,* 502 F.3d 263, 267 (3d Cir. 2007).

Affirmative defenses, including estoppel and res judicata, are governed by F.R.C.P. Rule 8(c)(1) of the Federal Rules of Civil Procedure, which requires these defenses to be asserted in the defendant's answer rather than in a pre-answer motion to dismiss. As the Supreme Court noted, dismissal under F.R.C.P. Rule 12(b)(6) is appropriate only where "the allegations in the complaint suffice to establish" the defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Courts have consistently held that affirmative defenses are better suited for resolution at later stages, such as summary judgment, unless their applicability is evident from the face of the complaint. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

## II. Duty to Account for Estate Property

The Trustee's fiduciary duties are explicitly outlined in 11 U.S.C. § 704(a), which mandates that the trustee must "collect and reduce to money the property of the estate" and be "accountable for all property received." The inclusion of non-debtor property in the estate or its transfer without explicit consent violates both statutory obligations and fundamental principles of bankruptcy law. In disputes involving property ownership under 11 U.S.C. § 541, bankruptcy courts must distinguish between estate property and non-debtor property. This distinction often requires factual development, which cannot be resolved on a motion to dismiss. *See SLW Capital LLC v. Mansaray-Ruffin,* 530 F.3d 230, 236 (3d Cir. 2008). In cases like this, where the Trustee argues mootness and issue preclusion as grounds for dismissal, these defenses must be raised in an answer under Rule 8(c)(1) and supported by evidence developed during discovery.

Moreover, before approving a sale, the Bankruptcy Court must determine whether the property belongs to the estate—in an adversary proceeding, not a contested matter. *In re Whitehall*

5

*Jewelers Holdings*, *Inc*., Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) (citing *Moldo v. Clark (In re Clark*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001). *See also SLW Capital LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)* 530 F.3r 230 (3rd Cir. 2008) where the 3rd Circuit held that a lien holder was entitled to adversary proceeding regarding its lien. *See In re Revel* 802 F.3d 558 (3d Cir. 2015) where property was allegedly sold "free and clear" but the Court reversed the sale stating that a lease rejected cannot then be extinguished in a 363 sale.  The court in *Revel* enunciated the clear principle that non-debtor rights cannot be extinguished in a 363 sale and that the violation of those rights can be challenged.  *See also Carnival Corp. v. DeCurtis Holdings LLC (In re DeCurtis Holdings),* No. 23-10548 (JKS), 2023 WL 5153645 (Bankr. D. Del. Aug. 9, 2023) where the Court held that a thorough examination of ownership rights was necessary.

### III.     Issue Preclusion:

For issue preclusion to apply, the issues in question must have been fully litigated, essential to the judgment, and resolved in a final decision.  The Supreme Court held in *Montana v. United States*, 440 U.S. 147, 153–54 (1979) that issue preclusion applies only when it "protects [parties] from the expense and vexation attending multiple lawsuits."  This principle is consistent with the Supreme Court's holding in *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019), where the Court clarified that "rejection of a contract—any contract—in bankruptcy operates not as a rescission but as a breach," meaning the rights granted under the contract remain enforceable.  Similarly, in *Butner v. United States*, 440 U.S. 48, 54 (1979), the Court emphasized that "property interests are created and defined by state law" unless a federal interest requires otherwise, reinforcing that third-party ownership rights must be respected in bankruptcy proceedings.

6

**IV.    Remedies Sought in Complaint:**

Courts have repeatedly recognized the significant market harm caused by the unauthorized use or mishandling of intellectual property. In *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp. 1325, 1332 (E.D. Pa. 1985), aff'd, 797 F.2d 1222 (3d Cir. 1986), the court noted that the improper use of intellectual property not only damages the owner's ability to capitalize on the asset but also disrupts the market by introducing unauthorized competition. This disruption devalues the intellectual property and erodes its exclusivity, a key factor in maintaining its marketability and appeal to potential partners or investors. Similarly, in *Georgia-Pacific Consumer Products LP* v. *Von Drehle Corp.*, 781 F.3d 710 (4th Cir. 2015), the court addressed the harmful effects of trademark infringement on a company's market position and brand identity. The court recognized that unauthorized use of trademarks can cause market confusion and damage a company's reputation, highlighting the broader risks posed by such infringement. This underscores the importance of protecting proprietary assets to prevent market disruption and preserve a company's goodwill.

## ARGUMENT

**I.    Motions to Dismiss:**

Defendant has filed a Motion to Dismiss based on F.R.B.P. Rule 12 of the Federal Rules of Civil Procedure claiming Rembrandt has failed to state a cause of action. Yet, Defendant does not allege that Rembrandt has failed to state sufficient facts to meet its prima facie burden. It alleges two affirmative defenses alleging that even if Rembrandt has stated a cause of action, it's not entitled to relief because of sale mootness and issue preclusion. These affirmative defenses are properly situated in Defendant's Answer, not a motion to dismiss for failure to state a claim.

The Trustee's reliance on these defenses at this stage is procedurally improper. Rule 8 underscores that such defenses are matters for pleading and subsequent litigation, not dismissal at the outset. Accordingly, the Court must deny the motion and allow the case to proceed to fact-finding and appropriate resolution on the merits.

## II.     Duty to Account for Estate Property

The Trustee has a legal and fiduciary duty to determine what are the assets of the estate. Once he makes that determination, he must remove the non-debtor assets; he cannot sell them. 11 U.S.C. § 704(a). This statutory duty requires the trustee to diligently manage estate property while ensuring that non-estate assets, such as Rembrandt's intellectual property, are excluded from the bankruptcy estate. The Trustee cannot sell property unless that property is property of the estate. 11 U.S.C. § 704(a). The Trustee has violated that duty by allowing the 363 Sale to proceed without first determining what trade secrets belonged to Rembrandt and needed to be returned. *See In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008)

Notably, the Trustee has not contested that Rembrandt's property is not Stream's property. Rembrandt is entitled to an adversary proceeding to determine what it owns and to have it returned. (*See, generally*, D.I. 3-1.) This Court should also note that neither the buyer nor any other party or creditor has asserted or provided any evidence that Rembrandt's IP is not embedded in the sold Stream technology.

In the context of asset purchase agreements, while buyers may select specific assets for acquisition, these agreements cannot override the exclusion of non-debtor property without explicit consent. *See In re Revel* 802 F.3d 558 (3d Cir. 2015). The Asset Purchase Agreement in this case explicitly excluded Rembrandt's intellectual property and related physical assets,

8

underscoring the continued obligation of the Trustee to recover and return such property. (*See, In re Stream TV Networks, Inc., et. al.*, Bankruptcy No. 23-10763, D.I. 876 at §§ 2.2(j)-(k).) By adhering to these legal precedents and statutory obligations, the Trustee must ensure that Rembrandt's excluded intellectual property is promptly returned. Failure to do so not only undermines the integrity of the bankruptcy process but also risks setting a precedent that erodes the protections afforded to non-debtor property rights. Judicial intervention is essential to safeguard these rights and compel the Trustee to fulfill his fiduciary duties.

Rembrandt had provided massive volumes of uncontroverted evidence of its ownership of the trade secrets and the license to Stream—both in this adversary proceeding, and in the record of the overarching bankruptcy proceeding. The Trustee refused to do so, admitting he made no effort in this regard as required by law. (*See, generally*, *In re Stream TV Networks, Inc., et. al.*, Bankruptcy No. 23-10763, DI 670.) The only description in the asset purchase agreement was simply "source coded stored on a secure server held at SCBV". During the sale, the Buyer's counsel contested that such a description did not include Rembrandt's IP: "the APA makes clear Rembrandt's IP and any 2 physical assets that contain its IP to the extent it's found 3 valid and existing and enforceable, they're excluded assets." (*In re Stream TV Networks, Inc., et. al.*, Bankruptcy No. 23-10763, D.I. 878 at 58:2-4.) Yet now, Buyer's counsel states that such a minimal description with an express exclusion of Rembrandt's IP precludes Rembrandt's ownership claim. The Trustee is effectively arguing that his transfer violated the Asset Purchase Agreement and this Court's Sale Order. While the sale of the assets lawfully sold may be res judicate as to those assets included in the 363 sale, it is not and cannot be res judicata as to assets that were explicitly excluded from the sale.

9

The Trustee by his own admission, had no experience in this technology and has not engaged any experts to assist him in an investigation or evaluation of Rembrandt's technology. (June 6 Transcript 71-73. DI 670). While the Trustee was ill equipped to complete his duties to determine the property of the estate, Stream has been represented by capable law firms, DLA Piper, Armstrong Teasdale, and Lewis Brisbois. Rembrandt has made its case to the IP attorneys and technical experts at these firms. Each of those law firms recommended that Stream either sign the settlement term sheet and agreement or assume the agreement as part of a reorganization plan (*see* DI 293 in Chapter 11 Case No. 23-10763). Each of these law firms did what the Trustee admits he failed to do. They brought in experts in technology and intellectual property law to evaluate Rembrandt's intellectual property. They each concluded that a license added value to Stream. Notably the current CEO of SeeCubic, Inc. agreed that a license agreement was appropriate and valuable to Stream. Mr. Stastney was the one that actually negotiated the terms of the license and signed the term sheet in front of Magistrate Parker.

To use a simple metaphor, if the Debtor rented a car from Hertz and stored it in a garage in a house that a Trustee later sells, title to the car does not transfer with the deed to the house and Hertz has every right to come to estate looking to get its car back. Even if the car was left in the garage and when the Trustee sold the house, the Trustee could still demand return of the car and provide the car back to Hertz. The Trustee has a duty to determine what property in the garage was the property of the debtor and what was not. The Trustee would have had an obligation to go to the buyer of the house and demand return of the car to Hertz. Likewise, the Trustee in this action has an obligation to return Rembrandt's intellectual property even if that means demanding and/or litigating the return of intellectual property it transferred to SeeCubic in violation of the Rembrandt license.

10

In this case, the Trustee can demand that Rembrandt's trade secrets be removed from any source code and returned to Rembrandt. Further, the Trustee can demand that copies of the necessary code be transferred to Rembrandt to comply with the license from Stream to Rembrandt that cannot be cancelled pursuant to 11 U.S.C. § 365(n). Certainly, the Trustee's job would have been much easier prior to the sale, but having transferred Rembrandt's trade secrets outside of Stream's control does not absolves the Trustee of his duty to return that property to Rembrandt. Rembrandt is requesting the Court to provide orders to that effect.

### III.     Issue Preclusion

A 363 Sale Order only affects the assets that were sold. Defendant's argument that the sale mooted Rembrandt's rights regarding property that was not sold is nonsensical. The only rational explanation to support the Trustee's argument is that Rembrandt's property was sold. But that would violate the Sale Order and the Asset Purchase Agreement (and several federal and state statutes, including 18 U.S.C. §1832 and 35 U.S.C. § 271). Absent the Trustee's admission he violated the Sale Order and committed a felony, the sale did not transfer title of Rembrandt's property to SeeCubic and thus was not included in the 363 Sale. The Trustee has not provided any statute or case law that supports the only argument he can make—that a sale includes assets that weren't sold. Rembrandt is entitled to its property. The sale did not terminate Rembrandt's property rights or the Trustee's legal duty.

The sale approval order did not adjudicate the ownership of Rembrandt's intellectual property. Instead, it merely authorized the sale of estate assets, explicitly excluding non-debtor property, such as Rembrandt's intellectual property and associated physical assets, as required under 11 U.S.C. § 541, which defines estate property. The absence of any final determination regarding ownership rights confirms that the order does not preclude Rembrandt's claims.

11

The Trustee's reliance on issue preclusion further misinterprets the scope and intent of the prior orders. Those orders explicitly preserved the rights of third parties and affirmed the exclusion of non-debtor property from the estate. Attempting to invoke issue preclusion here not only distorts the doctrine's purpose but also undermines these well-established protections. Bankruptcy law is designed to safeguard non-debtor property, ensuring that third-party rights, like Rembrandt's, are not unfairly compromised. As such, the Trustee's arguments fail to provide any valid basis for dismissing Rembrandt's claims.

**IV.    Remedies Sought in Complaint:**

The Trustee's failure to act exposes Rembrandt to the significant risk of further unauthorized use and misappropriation of its intellectual property, causing irreparable harm to its competitive advantage and market position. Intellectual property, by its nature, derives much of its value from exclusivity and control. Once trade secrets or proprietary methodologies are disclosed or misused, the harm cannot easily be undone. Courts have long recognized that the loss of exclusive control over intellectual property can constitute irreparable harm, as such loss often results in damages that are difficult to quantify and inadequate to fully compensate the injured party. Although *Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607 (5th Cir. 1993), primarily addresses fiduciary breaches in the context of union representation, the broader principle that certain harms, such as the misuse of confidential or proprietary information, can be irreparable is widely acknowledged in intellectual property and equity jurisprudence. This principle underscores the importance of judicial intervention to prevent such harm, particularly when exclusivity and control are central to the value of the intellectual property at issue. Similarly, in *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998), the court found that harm to a

party's competitive position and market goodwill resulting from the unauthorized use of intellectual property is inherently irreparable.

In this case, Rembrandt's intellectual property includes proprietary methodologies, software, and trade secrets vital to its glasses-free 3D technology, representing years of research and significant investment. The Trustee's misconduct and failure to remove Rembrandt's property risks further unauthorized use of this property by third parties, eroding Rembrandt's market exclusivity and diminishing its competitive advantage. The harm extends beyond immediate financial losses. As the Third Circuit observed in *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990), once intellectual property is misused, the loss of control over how the technology is marketed and perceived in the industry permanently undermines the owner's goodwill and reputation.

The harm caused by the Trustee's failure extends beyond the intellectual property itself and encompasses significant damage to Rembrandt's business relationships and future opportunities. Potential partners and investors may hesitate to engage with a company that cannot adequately protect its proprietary assets. This risk is exemplified in *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 939 (N.D. Cal. 2009), where the court addressed the harm caused by the unauthorized use of proprietary software. The court recognized that such use directly interferes with the copyright holder's ability to maintain control over its products, noting the broader implications for market positioning and consumer perception. The decision highlights the far-reaching consequences of failing to protect intellectual property, including the disruption of a company's ability to preserve its business model and strategic relationships. This precedent underscores the necessity of enforcing intellectual property rights to safeguard market exclusivity, reputation, and long-term business success.

Similarly, the Trustee's deliberate refusal to recover and safeguard Rembrandt's intellectual property jeopardizes its market exclusivity, diminishes its competitive advantage, and erodes trust among business partners and investors. This harm is both imminent and irreparable, as monetary compensation cannot adequately address the loss of control over proprietary innovations or the dilution of competitive edge in the industry. Judicial intervention is therefore necessary to compel the Trustee to act in accordance with their fiduciary duties, ensuring the protection of Rembrandt's intellectual property, business relationships, and market position. Without immediate action, the damage to Rembrandt's goodwill, reputation, and future opportunities will become increasingly difficult to remedy.

The improper handling of Rembrandt's intellectual property by the Trustee diminishes its value, creates unnecessary litigation, and undermines the broader framework of intellectual property protections. Intellectual property derives much of its value from its exclusivity and the owner's ability to control its use and distribution. When these rights are improperly managed or violated, the resulting harm extends beyond the immediate loss of value to include broader market impacts and increased legal conflicts.

The Trustee's failure to ensure the protection and proper handling of Rembrandt's intellectual property exacerbates these risks. The resulting uncertainty not only impacts Rembrandt's immediate operations but also deters potential investors or partners, who may perceive the company as unable to protect its core assets.

Moreover, this mishandling creates unnecessary legal conflicts, forcing Rembrandt to engage in prolonged and costly litigation to enforce its rights. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014), the Supreme Court highlighted the financial and strategic burdens associated with intellectual property litigation, particularly when avoidable

14

conflicts arise from improper conduct by fiduciaries or counterparties. Such litigation not only drains resources but also detracts from a company's ability to focus on innovation and market growth.

The broader implications of the Trustee's inaction also threaten the integrity of intellectual property protections. As the Supreme Court observed in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006), the enforcement of intellectual property rights is essential to incentivizing innovation and maintaining fair competition. Allowing the Trustee's mishandling to go unchecked undermines these principles and sets a dangerous precedent for the treatment of third-party property in bankruptcy proceedings.

To mitigate these harms and restore the integrity of intellectual property protections, judicial intervention is necessary to compel the Trustee to fulfill his fiduciary duties. Ensuring the proper handling of Rembrandt's intellectual property is critical not only to preserving its value but also to upholding the legal and market principles that protect innovation and fair competition.

## CONCLUSION

For the forgoing reasons, Rembrandt respectfully requests that this Court deny the instant motion.

Dated: January 27, 2025

DEVLIN LAW FIRM LLC

*/s/ Andrew DeMarco*
Andrew DeMarco (PA Bar No. 326294)
ademarco@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010
Fax: (302) 353-4251

*Attorneys for Rembrandt 3D Holding Ltd*